# In the United States Court of Federal Claims

No. 06-427C
No. 07-365C
(Filed: August 15, 2007)

* * * * * * * * * * * * * * * * * * * * * * * * *

**BERNARD d'ABRERA and HILL HOUSE PUBLISHERS PTY LTD.,**

Plaintiffs,

v.

**UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * *

**BERNARD d'ABRERA and HILL HOUSE PUBLISHERS PTY LTD.,**

Plaintiffs,

v.

**UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * *

Claims of copyright infringement; 28 U.S.C. § 1498(b); related actions pending in different courts; 28 U.S.C. § 1500; different operative facts; consolidation; RCFC 42

Sally Wiggins, Niro, Scavone, Haller & Niro, Chicago, IL, for plaintiffs.

Scott Bolden, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, Civil Division, and John J. Fargo, Director, Intellectual Property Section, Commercial Litigation Branch, Civil Division, United States Department of

Justice, Washington, D.C. Of counsel was Lauryn Guttenplan, Smithsonian Institution, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

These cases raise claims of copyright infringement under 28 U.S.C. § 1498(b). On May 10, 2006, Bernard d'Abrera and Hill House Publishers Pty Ltd. ("Hill House") filed suit against Stephen Kinyon and the Smithsonian Institution in the United States District Court for the Southern District of New York, alleging violations by both defendants of the Lanham Act, 15 U.S.C. § 1125(a), and direct copyright infringement by Mr. Kinyon of plaintiffs' works in contravention of the Copyright Act, 17 U.S.C. §§ 101 *et seq*. Complaint, *d'Abrera v. Smithsonian Institution*, No. 06 CIV 3550 (WCC) (S.D.N.Y. May 10, 2006) ("*Smithsonian* Compl."). Sixteen days later, on May 26, 2006, Mr. d'Abrera and Hill House filed suit against the government in this court, alleging direct and vicarious copyright infringement by the Smithsonian, among other things by the actions of Mr. Kinyon. Compl. in No. 06-427C, at 1, 6-8. Mr. d'Abrera is a lepidopterist who writes, illustrates, and publishes books on butterflies and moths. Compl. in No. 06-427C, ¶ 8. Mr. d'Abrera and his publishing firm, Hill House, allege that Mr. Kinyon and the Smithsonian copied more than 1,375 of Mr. d'Abrera's pictures of butterflies and moths for their book entitled *An Illustrated Checklist for the Butterflies of Myanmar*. Compl. in No. 06-427C, ¶¶ 24-25.[1]

As a result of preliminary proceedings, first in this court and then in the district court, stipulations were entered in the district court resulting in the termination of the action in district court. In that court, the claims brought against Mr. Kinyon and the Smithsonian under the Lanham Act were dismissed, and the copyright infringement claim against Mr. Kinyon was transferred to this court. Stipulation and Order of Transfer and Dismissal, *d'Abrera v. Smithsonian Institution*, No. 06 CIV 3550 (WCC) (S.D.N.Y. Nov. 8, 2006) ("Stipulation and Transfer"). The transfer was received in this court on June 11, 2007, and the resulting action was docketed by the Clerk as No. 07-365C. Promptly thereafter, this court issued an order acknowledging the transfer and requesting that the parties address whether the court should consolidate the two cases consequently pending in this court and whether the copyright infringement claim originally filed against the government in this court should be dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 1500. That statute in essence provides that this court may not exercise jurisdiction over a claim if the same claim was already pending or was filed simultaneously in another court. *See Keene Corp. v. United States*, 508 U.S. 200 (1993);

---

[1]Myanmar is the name applied by the ruling junta, the State Peace and Development Council, of the country previously known as the Union of Burma. The United States Government does not recognize the name change. *See* U. S. Department of State, Background Note: Burma (June 2007), http://www.state.gov/r/pa/ei/bgn/35910.htm (last visited Aug. 15, 2007).

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994) (en banc).[2] The parties have briefed these questions, and they consequently are ready for disposition by the court.

## BACKGROUND[3]

Plaintiff Bernard d'Abrera is a lepidopterist, a specialist in the order of insects that includes butterflies, moths, and skippers. Compl. in No. 06-427C, ¶ 8. Mr. d'Abrera and his wife, Lucilla d'Abrera, are directors of co-plaintiff, Hill House, an Australian publishing firm located in Malvern, Victoria. *Id.* ¶¶ 5-6. Mr. d'Abrera writes, illustrates, and publishes books on butterflies, moths, and other natural-history subjects. *Id.* ¶ 8. In that capacity, he has access to the collections of the British Museum of Natural History to produce images for his volumes on the lepidoptera of the world. *Id.* Mr. d'Abrera has worked for over forty years to photograph specimens from the British Museum and has traveled around the world further to identify and catalog lepidoptera. *Id.* ¶¶ 10, 12. Hill House has published numerous books in which all of the images of butterflies and moths were photographed by Mr. d'Abrera. *Id.* ¶ 14. These books, including *Butterflies of the Oriental Region*, contain a copyright notice identifying Mr. d'Abrera as the copyright owner. *Id.* ¶ 18. Mr. d'Abrera also contributed the plates to a book entitled *The Butterflies of the Malay Peninsula*, 4th ed., which identifies Mr. d'Abrera as the illustrator and thus the copyright owner of his own butterfly plates. *Id.*

Defendant, the United States, is sued by and through the Smithsonian Institution. *See O'Rourke v. Smithsonian Inst. Press*, 399 F.3d 113, 119 (2d Cir. 2005) (holding that Congress intended 28 U.S.C. § 1498(b) to include the Smithsonian within the term "the United States"). Stephen Kinyon, an amateur lepidopterist, worked as a volunteer on a project initiated by the Smithsonian's Conservation and Research Center to produce an illustrated checklist of Burma's butterflies. Compl. in No. 06-427C, ¶¶ 21-22; Defendant's Brief Regarding Consolidation and Section 1500 ("Def.'s Br.") at 5.[4] Mr. Kinyon and others at the Smithsonian's Center realized

---

[2]28 U.S.C. § 1500 provides as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

[3]The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements have been taken from the parties' filings and are either undisputed, except where a factual controversy is explicitly noted, or are alleged and assumed to be true.

[4]The government represents that "Mr. Kinyon worked as a volunteer lepidopterist for the Smithsonian, rather than as a formal employee." Def.'s Br. at 5.

they could not collect their own images of specimens to cover every butterfly and moth species found in Burma. Compl. in No. 06-427C, ¶ 23. As a result, Mr. Kinyon and others at the Center "filled in the gaps with images copied from several published works." *Id.* Mr. Kinyon allegedly scanned and used more than 1,275 butterfly pictures from Mr. d'Abrera's *Butterflies of the Oriental Region*, parts 1, 2, and 3, and over 100 butterfly pictures from *The Butterflies of the Malay Peninsula*, *id.* ¶ 24, thus using works copyrighted by Mr. d'Abrera. *Id.* ¶ 18. The cover of *An Illustrated Checklist for the Butterflies of Myanmar* states that it is "Sponsored by: Smithsonian Institution" and "Compiled by: Stephen Kinyon." *Id.* ¶ 26.

Plaintiffs brought suit against Mr. Kinyon and the Smithsonian in the United States District Court for the Southern District of New York on May 10, 2006. *Smithsonian* Compl. That complaint stated two claims – one against Mr. Kinyon for direct copyright infringement and another against both Mr. Kinyon and the Smithsonian for false designation of origin pursuant to the Lanham Act. *Id.* ¶¶ 37, 42.[5]

Shortly thereafter, on May 26, 2006, plaintiffs filed suit in this court invoking 28 U.S.C. § 1498(b) and alleging claims against the United States for copyright infringement. Compl. in No. 06-427C, ¶¶ 37, 45.[6] That complaint alleged that the Smithsonian engaged in direct copyright infringement by publishing *An Illustrated Checklist for the Butterflies of Myanmar*, *id.* ¶ 35-40, and in "vicarious" copyright infringement, among other things, by the infringing conduct of Mr. Kinyon and others. *Id.* ¶ 42.

---

[5]Pursuant to 15 U.S.C. § 1121(a), plaintiffs were required as a jurisdictional matter to bring their claim under the Lanham Act in a district court. Moreover, a claim of copyright infringement against Mr. Kinyon personally also had to be brought in a district court, except that, where Mr. Kinyon was "acting or professing to act" under the authority of the United States, suit would have to be brought against the United States in this court. 28 U.S.C. § 1500.

[6]Section 1498(b) provides in part that

> *whenever the copyright in any work protected under the copyright laws* of the United States *shall be infringed by* the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or *any person*, firm, or corporation *acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action* by the copyright owner against the United States *in the Court of Federal Claims* for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of Title 17, United States Code.

28 U.S.C. § 1498(b) (emphasis added).

In the case originally filed in this court, a motion by the government to dismiss for lack of jurisdiction based upon 28 U.S.C. § 1500 was briefed and then argued at a hearing held on October 19, 2006. At the hearing, the court noted that jurisdictionally the motion appeared to turn on Mr. Kinyon's role:

> MR. BOLDEN: . . . Our argument is that for both the purposes of Section 1500 and for Section 1498 Mr. Kinyon is an agent of the United States Government.
>
> THE COURT: Well, that's one of the interesting points about this. It appears that Mr. Kinyon was a volunteer.
>
> MR. BOLDEN: That's correct, Your Honor.
>
> THE COURT: How can a volunteer be an agent?
>
> MR. BOLDEN: Essentially what he was doing is he was helping identify and classify butterflies over in Burma for the Smithsonian, and he was acting at the direction of one of the Smithsonian's employees, a person by the name of Chris Wimmer. What they decided to do is create a field guide of butterflies for the Burmese forest rangers, and they decided to do this with the Smithsonian's authorization, review, direction and supervision. Mr. Kinyon went out, he obtained samples of butterflies. He got pictures of butterflies and put them into the book. This book was paid for out of grant money that was supplied by the Smithsonian, and the book itself on the front cover of it actually says that this is sponsored by the Smithsonian. It was done at the direction of the Smithsonian. Those particular facts are from the complaints.

Hr'g Tr. 7:20 to 8:22 (Oct. 19, 2006).[7]

Further discourse with counsel confirmed that the government was representing Mr. Kinyon in the *Smithsonian* case before the district court and that the government would also take the position in that case that Mr. Kinyon was acting as the government's agent:

---

[7]As will be addressed subsequently, the *Smithsonian* complaint filed in district court did *not* allege that Mr. Kinyon was acting at the direction of a Smithsonian employee, or particular employee, contrary to Mr. Bolden's representation. *See infra*, at 11. In contrast to the *Smithsonian* complaint, the complaint originally brought in this court does allege that the Smithsonian had the right and ability to supervise and control Mr. Kinyon's efforts. Compl. in No. 06-427C, ¶¶ 29, 42.

> THE COURT: [W]e might be making this case a lot more complex that it need be because what is the Court to do with the question of whether a volunteer can be an agent?
>
> MR. BOLDEN: Your Honor, I think essentially from the face of both complaints that question is answered for the purpose of Section 1500, but we do have additional authority regarding Mr. Kinyon's status, and the government is representing him up in the Southern District of New York.
>
> THE COURT: Well, that's true, but it seems that this whole case, the 1500 case, turns on whether Mr. Kinyon was in fact an agent of the United States. Plaintiffs have tried to protect themselves by saying in the Southern District of New York well, maybe not. We're going to make a claim against him personally, not as an agent of the United States. That's the way they've styled their claim up there, and they styled it down here against the Smithsonian.

Hr'g Tr. 15:23 to 16:16 (Oct. 19, 2006). With the government's representation that Mr. Kinyon was the Smithsonian's agent, a consensus emerged that the parties would request that the district court transfer the copyright infringement claim to this court. Hr'g Tr. 19:15 to 20:12 (colloquy with plaintiffs' counsel), 23:21 to 25:7 (colloquy with the government's and plaintiffs' counsel) (Oct. 19, 2006).[8]

In the district court case, the parties then entered into a stipulation of transfer and dismissal, providing (1) that "[w]ith respect to the allegations in the [*Smithsonian*] Complaint, Kinyon was acting with the authorization and consent of the Smithsonian," (2) that the Lanham Act claim be dismissed with prejudice and without costs, (3) that the district court lacked jurisdiction over the copyright claims, and (4) that the copyright claims be transferred to this court. Stipulation and Transfer, *d'Abrera v. Smithsonian Institution*, No. 06 CIV 3550 (WCC) (S.D.N.Y. Nov. 7, 2006). Judge Connor of the district court entered the Stipulation and Transfer as an order of that court on November 8, 2006.

Thereafter, the transfer of the *Smithsonian* case was delayed, and, consequently the government's motion under Section 1500 to dismiss the case originally filed in this court was

---

[8]Prior to 1960, "the government enjoyed immunity from suit for copyright infringements, [but] government[al] employees did not." *Blueport Co. v. United States*, 76 Fed. Cl. 702, 720 (2007); *see also O'Rourke*, 399 F.3d at 117. In that year, 28 U.S.C. § 1498, which previously addressed only patent infringement, was amended to add Subsection (b) to allow suits against the government for copyright infringement. *See* Act of Sept. 8, 1960, Pub. L. No. 86-726, §§ 1, 4, 74 Stat. 855, 856. The 1960 amendment to Section 1498 in effect made suit against the government in this court the exclusive remedy for an infringement of a copyright by a "person . . . acting for the Government and with the authorization or consent of the Government." 28 U.S.C. § 1498(b).

denied without prejudice to renewal pending transfer of the *Smithsonian* case to this court. Order of March 29, 2007.[9] With the completion of the transfer and the subsequent briefing of the jurisdictional issues by the parties, the dispute over this court's jurisdiction has become ready for resolution.

## STANDARDS FOR DECISION

The jurisdiction of a federal court must be established as a threshold matter before the court may proceed with the merits of any action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998); *see* Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*, or even on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). "Should the court find that it lacks subject matter jurisdiction to decide a case on the merits, it is required either to dismiss the action as a matter of law or to transfer it to another federal court that would have jurisdiction." *Travelers Indem. Co. v. United States*, 72 Fed. Cl. 56, 59-60 (2006) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985); *Gray v. United States*, 69 Fed. Cl. 95, 102-03 (2005)).

As plaintiffs, Mr. d'Abrera and Hill House bear the burden of establishing the court's subject matter jurisdiction over their claims by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). In determining its subject matter jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiffs' complaint and draw all reasonable inferences in favor of the plaintiffs. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *see also Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989).

Jurisdiction over plaintiffs' copyright infringement claims in this court is supplied by 28 U.S.C. § 1498(b). However, the jurisdictional grant in Section 1498(b) is limited by Section 1500.

---

[9] If plaintiffs had filed their complaint in this court first and then filed suit in the district court, they would not have faced the possibility of dismissal for lack of jurisdiction under Section 1500. *See Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943, 949 (Ct. Cl. 1965) (holding that the filing of a claim against the United States in district court subsequent to the filing of the same claim in the Court of Claims did not divest that court of jurisdiction). After the Supreme Court's decision in *Keene*, the continued viability of the ruling in *Tecon Eng'rs* was reaffirmed in *Hardwick Bros. v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995).

## ANALYSIS

### I. Applicability *Vel Non* of 28 U.S.C. § 1500

A. *Timing of Claims*

Section 1500 limits the subject matter jurisdiction of the Court of Federal Claims by barring "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The purpose of Section 1500 is to "bar . . . the claim of a plaintiff who, upon filing, has an action pending in any other court 'for or in respect to' the same claim." *Keene*, 508 U.S. at 209. "Thus, [S]ection 1500 divests this court of subject matter jurisdiction when a plaintiff has elected to file the same claim in another court prior to filing suit in this [c]ourt." *Cooke v. United States*, 77 Fed. Cl. 173, 176 (2007). Whether another claim is "pending" for purposes of Section 1500 is determined at the time at which the suit is filed in this court, not the time at which the government moves to dismiss the action. *Loveladies Harbor*, 27 F.3d at 1548. However, this court is not divested of jurisdiction when a claim that was first filed here is subsequently brought in another court. *Hardwick Bros.*, 72 F.3d at 886; *Tecon Eng'rs*, 343 F.2d at 949. Because the *Smithsonian* suit was filed sixteen days prior to the time plaintiffs brought their initial case in this court, Section 1500 might potentially bar the action subsequently filed here.

A further issue is engendered by the transfer of the *Smithsonian* action from the District Court for the Southern District of New York to this court. When an action is transferred under 28 U.S.C. § 1631, the statute provides that "the action or appeal shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." A question under Section 1500 arises where more than one count is involved and all counts are not transferred. In this circumstance, the Federal Circuit has ruled that "the 'filing' of the same claim simultaneously in the district court and the Court of Federal Claims by operation of § 1631 deprives the latter court of jurisdiction pursuant to § 1500." *United States v. County of Cook*, 170 F.3d 1084, 1091 (Fed. Cir. 1999). Under *County of Cook*'s simultaneous-filing rule, plaintiffs' Lanham Act claim and their copyright infringement claim against Kinyon in the Southern District of New York are considered filed simultaneously, such that the Lanham Act claim was pending in the district court for purposes of Section 1500 at the time the copyright infringement claim against Kinyon was deemed to be filed in the Court of Federal Claims by operation of Section 1631. *See County of Cook*, 170 F.3d at 1091. In short, although the copyright claim has now been transferred from the district court to this court and thus does not signify anything for purposes of Section 1500, the Lanham Act count in the district court continues to have a bearing even though it has been dismissed. *See Keene*, 508 U.S. at 207 ("the jurisdiction of the [court] depends upon the state of things at the time of the action brought.") (citations omitted).[10]

---

[10]As the court in *County of Cook* candidly recognized, nothing in the text of Section 1500 or in the pertinent legislative history compelled or supported the interpretation accorded Section

Section 1500 is *not* implicated in two situations: (1) when *all* of the claims in an action are transferred to the Court of Federal Claims pursuant to Section 1631 and (2) when claims based on differing operative facts or seeking differing remedies are filed in district court and a transfer is made to this court of one or a set of those claims. *County of Cook*, 170 F.3d at 1091 n.8.[11] Because not all of the claims in the *Smithsonian* action were transferred, this court's subject-matter jurisdiction hinges on a "same claim" analysis. Therefore, whether Section 1500 bars jurisdiction over the transferred count of the district court complaint (plaintiffs' direct copyright infringement claim against Stephen Kinyon) turns on whether it is the same claim as the count that was not transferred (plaintiffs' Lanham Act claim against the Smithsonian and

---

1500 in that decision. Rather, policy considerations drove the result, and those policy considerations are arguable at best. As a jurisdictional statute, Section 1500 ought to be construed with fidelity to its terms, *see Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 405 (1995) (jurisdictional statutes "must be construed with strict fidelity to their terms") (citing *Cheng Fan Kwok v. Immigration and Naturalization Serv.*, 392 U.S. 206 (1968)), and neither expanded nor contracted to reflect policy preferences that may or may not have led to their enactment.

The interpretation accorded Section 1500 in *County of Cook* creates a significant trap for the unwary. In factual circumstances where jurisdiction might be split between a district court and this court, the operation of Section 1500 as interpreted in *County of Cook* could entirely bar a cause of action from being heard. First, when a complaint is filed in the district court and then suit is brought in this court on the same operative facts, this court is divested of subject matter jurisdiction and must dismiss the claim. That result is dictated by the express terms of Section 1500. Second, where only one complaint is filed in district court based upon a single set of operative facts but jurisdiction respecting one or more counts of that complaint rests with this court, the simultaneous filing rule of *County of Cook* also divests this court of subject matter jurisdiction when the district court transfers one or some of those counts to this court pursuant to Section 1631. *County of Cook*, 170 F.3d at 1091. This outcome is not derived from Section 1500 itself but rather is an artifact of the simultaneous-filing interpretation of *County of Cook*. Third, the only safe alternative for a plaintiff is to file first in this court, and thereafter to file in district court. *See Tecon Eng'rs, Inc.*, 343 F.2d at 949.

The transfer provisions of Section 1631 were enacted to *cure* jurisdictional defects, but *County of Cook* disables that cure by superimposing a policy-based interpretation of Section 1500. Nonetheless, this court is bound by the *County of Cook* precedent and will faithfully follow and apply it.

[11]Among other things, *County of Cook* held that 28 U.S.C. § 1631 "permit[s] the transfer of less than all of the claims in an action," 170 F.3d at 1089, while recognizing that courts of appeals had split on the issue. *Id.* at 1087-88. *Compare Hill v. United States Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (the statute permits transfer of an entire action over which a court lacks jurisdiction, not an individual claim), *with Federal Deposit Ins. Corp. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (one of several claims may be transferred); *Miller v. United States*, 753 F.2d 270, 275-76 (3d Cir. 1985) (allowing transfer of part of an appeal).

Kinyon).[12] In the same vein, the court's subject matter jurisdiction over plaintiffs' copyright infringement claims against the government brought initially in this court turns on whether they are the same claims as the count based on the Lanham Act in the *Smithsonian* complaint filed in district court.

B. *"Same Claim" Analysis for Purposes of 28 U.S.C. § 1500*

"For the Court of Federal Claims to be precluded from hearing a claim under Section 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*." *Loveladies Harbor*, 27 F.3d at 1551 (emphasis in original); *see also Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). Only the issue of "same operative facts" warrants a detailed discussion.[13] On one hand, "[c]laims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court."' *Harbuck*, 378 F.3d at 1329 (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed. Cir. 1988)). On the other hand "[c]laims involving the same general factual circumstances, but distinct material facts[,] can fail to trigger Section 1500." *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993). In short, if a material factual difference exists between two claims, they are not the same for purposes of Section 1500. *See Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006); *Williams v. United States*, 71 Fed. Cl. 194, 199-200 (2006).

*Keene* instructs that a careful comparison of the operative facts for the claims is required. 508 U.S. at 210-13; *see also Harbuck*, 378 F.3d at 1329 (citing *Loveladies Harbor*, 27 F.3d at

---

[12]Plaintiffs seek to avoid the need for an analysis of the operative facts in their Lanham Act and copyright-infringement claims brought before the district court by contending that "all" of the pending claims in the *Smithsonian* action were transferred to this court, noting that the Lanham Act claim was dismissed as part of the Stipulation and Transfer. Plaintiffs' Brief To (1) Consolidate . . . and (2) Oppose Dismissal ("Pls.' Br.") at 5-6. However, the critical time for assessing claims is when suit was brought, not when one of the claims was transferred. *See Keene*, 508 U.S. at 207-209 (time-of-filing rule governs applicability of Section 1500).

[13]The inclusion of other and different requested relief in claims does not avoid application of Section 1500, so long as there is overlap in the relief requested. *Harbuck*, 378 F.3d at 1329 (citing *Keene*, 508 U.S. at 212). Under the copyright infringement claims, plaintiffs seek monetary damages pursuant to 17 U.S.C. § 504(b) and a preliminary and permanent injunction enjoining infringement of plaintiffs' copyrighted works. *Smithsonian* Compl. at 9, ¶¶ A, B (prayer for relief); Compl. in No. 06-427C, at 9, ¶¶ (3)-(6) (demand for judgment). Plaintiffs also sought monetary damages under the Lanham Act, pursuant to 15 U.S.C. § 1117(a). *Smithsonian* Compl. at 9, ¶ C. Even though plaintiffs additionally seek injunctive relief under the copyright infringement claim, the monetary damages they seek under both types of claims is enough overlap to be considered the "same relief."

1549); *Schrader v. United States*, 75 Fed. Cl. 242, 246-47 (2007). In *Harbuck*, the plaintiff had filed claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, 2000e-1 to 2000e-17, and the Equal Pay Act, 29 U.S.C. § 206(d), in district court, and the latter claim was later transferred to this court. 378 F.3d at 1326. The court of appeals held that the transferred claim was in essence the same claim as that which was not transferred, concluding that "the two theories upon which she relies are but different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men." *Id*. at 1329.

The facts in *Heritage Minerals* and *Cooke* illustrate circumstances that yield a different result. In *Heritage Minerals*, plaintiffs had filed an action in district court alleging that the Navy had contaminated groundwater on their property adjacent to a Naval base. 71 Fed. Cl. at 710-11. Upon dismissal of that action as time-barred, plaintiffs appealed to the Third Circuit. *Id*. at 711. Subsequently, plaintiffs filed a takings action in this court based upon the alleged installation and maintenance of groundwater-monitoring wells on their property. *Id*. The court held that the installation and maintenance of the monitoring wells constituted "later and differing conduct" than the contamination and therefore did not involve the same operative facts. *Id*. Similarly, in *Cooke*, the court held that the plaintiff's claim under the Equal Pay Act, filed in the district court, did not involve the same operative facts as her claim, under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), transferred to, and then "filed" in this court through the operation of Section 1631, alleging that the government engaged in retaliatory conduct in the form of denied opportunities and changes in the plaintiff's employment. 77 Fed. Cl. at 175, 177-78. The court found that the FLSA claim in this court involved "later and different conduct" and did not trigger the jurisdictional bar of Section 1500. *Id*. at 177.

Here, although plaintiffs' claims brought in district court shared a general factual background, the Lanham Act claim involved different conduct than the copyright infringement claim. Plaintiffs' copyright infringement claim in the *Smithsonian* case was based on the allegation that Mr. Kinyon "reproduc[ed] and distribut[ed] over 1,375 of Mr. d'Abrera's photographs without . . . permission, license, or consent." *Smithsonian* Compl. ¶ 37. In contrast, plaintiffs' Lanham Act claim for false designation of origin alleged that the Smithsonian and Mr. Kinyon "knowingly and intentionally authoriz[ed] and participat[ed] in the passing off and utilization of the false designations of origin," *i.e.*, deceiving individuals into believing that the book and the photographs were the unique work of the Smithsonian Center and Mr. Kinyon. *Id*. ¶¶ 42, 44. As plaintiffs persuasively argue, the operative fact of a false designation claim–that the producer had misrepresented someone else's goods or services as his or her own–involves the repackaging of plaintiffs' goods or materials. Pls.' Br. at 8 (*citing Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 27 & n.1 (2003) (referring to "passing off" and "reverse passing off" scenarios); *Tiseo Architects, Inc. v. SSOE, Inc.*, 431 F. Supp.2d 735, 742 (E.D. Mich. 2006)). In short, plaintiffs' now-dismissed Lanham Act claim involved different conduct and was therefore not the "same claim" as their copyright infringement claim in the district court.

Correlatively, the copyright infringement claims filed in the district court and this court also reflect a material factual difference. Again, the general factual circumstances are the same,

but the key factual divergence was whether Mr. Kinyon allegedly was acting as an agent of the Smithsonian or on his own. In this respect, in the district court, plaintiffs relied on Mr. Kinyon's status as a volunteer to aver that he, but not the Smithsonian, had "engaged in direct infringement of [p]laintiffs' copyright." *Smithsonian* Compl. ¶ 37. Additionally, plaintiffs' Lanham Act claim in the district court alleges that the Smithsonian "aided and abetted" Mr. Kinyon's actions, not that Mr. Kinyon was an agent of the Smithsonian. *Id.* ¶ 44.[14] On the other hand, in this court, plaintiffs claim that Mr. Kinyon was acting with the authority of the Smithsonian, that the Smithsonian also engaged in direct infringement, and that the Smithsonian "had the right and ability to supervise and/or control the infringing conduct of . . . Stephen Kinyon." Compl. in No. 06-427C, ¶¶ 39, 42. Thus, plaintiffs' copyright claims in this court contain material factual allegations that are in direct opposition with the claims they made in the district court. While this factual discrepancy was resolved by the parties' stipulation in the district court that Mr. Kinyon acted "with the authorization and consent of the Smithsonian," Stipulation and Transfer ¶ 3,[15] "the jurisdiction of the [c]ourt depends upon the state of things at the time of the action

---

[14]"Aid[ing] and abett[ing]" would not necessarily rise to the level of agency. Under *Restatement (Second) Agency* § 225 (1958), "[o]ne who volunteers services without an agreement for or expectation of reward *may* be a servant of the one accepting such services." (Emphasis added.) Among other things, prior to the parties' stipulation in the district court, an important question would have been whether Mr. Kinyon submitted to the supervision or control of the Smithsonian's Conservation and Research Center.

[15]"A stipulation is a judicial admission binding on the parties making it[,] absent special considerations." *John McShain, Inc. v. United States*, 375 F.2d 829, 831 (Ct. Cl. 1967); *see generally Boeing Co. v. United States*, 75 Fed. Cl. 34, 43 (2007). "An express waiver made . . . preparatory to trial by the party or his attorney conceding for purposes of the trial the truth of some alleged fact, has the effect . . . that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it." 9 Wigmore, *Evidence* § 2588 (Chadbourn rev. 1981); *see also Vander Linden v. Hodges*, 193 F.3d 268, 279-80 (4th Cir. 1999) (same).

In the instant case, judicial estoppel will bind the parties to the stipulated fact. Under the judicial estoppel doctrine, "[w]here a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (citing *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000)). Courts have recognized that the purpose of this doctrine is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (citing *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

brought.'" *Keene*, 508 U.S. at 207 (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824) (Marshall, C.J.)). Thus, a material difference existed in the alleged operative facts such that the copyright claims plaintiffs brought in district court and this court were not the same for purposes of Section 1500.

In sum, the Lanham Act claim and the copyright infringement claim filed in the district court were not the "same claims" for purposes of Section 1500 because they did not satisfy the "same operative facts" prong. Correlatively, the copyright-infringement claim transferred by the district court to this court was not the "same claim" as the copyright-infringement claim originally filed in this court because the allegations respecting Mr. Kinyon's role with the Smithsonian were critically different. Therefore, Section 1500 does not bar this court's jurisdiction over the transferred copyright-infringement claim, nor does it bar the copyright infringement claim stated in the original complaint filed in this court.

**II. Consolidation**

Because both the suit originally filed by plaintiffs in this court and that transferred to this court by the district court are jurisdictionally viable, consolidation should be considered. Respecting consolidation, RCFC 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

To determine whether consolidation of claims is appropriate, the court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. *Cienega Gardens v. United States*, 62 Fed. Cl. 28, 31 (2004) (citing *Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429, 433 (1993)). Consolidation prevents separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts. *Karuk Tribe*, 27 Fed. Cl. at 433. The court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). In making its determination, the court must consider:

> [w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple trial alternatives.

*Id*. at 1285 (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). Where common questions of law or fact are involved and consolidation would avoid unnecessary costs, consolidation is encouraged. *Cienega Gardens*, 62 Fed. Cl. at 32 (citing *Johnson v. Mississippi*

*Valley Barge Line Co.*, 34 F.R.D. 140, 142 (W.D. Pa. 1963)). "Consolidation can be ordered despite opposition by the parties." *Id.* (citing *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983); *Midwest Cmty. Council, Inc. v. Chicago Park Dist.*, 98 F.R.D. 491, 500 (N.D. Ill. 1983)). Thus, the court will consider the parties' positions in its analysis, but will not accord the parties' views dispositive weight. *Id.*

Only copyright infringement claims remain in these cases. Further, because the parties resolved the crucial factual inconsistency in the cases when they stipulated in the district court that Mr. Kinyon was acting as an agent of the government, the parties acknowledge that these cases now reflect similar facts. Moreover, consolidation will advance the court's interest in judicial economy.

For these reasons, consolidation of these two cases is appropriate.

## CONCLUSION

Neither the copyright infringement claim originally filed in this court (No. 06-427C) nor the copyright infringement claim transferred to this court (No. 07-365C) will be dismissed for lack of jurisdiction under 28 U.S.C. § 1500. The original complaints did not rest on the same operative facts, but rather the factual allegations reflected material differences.

Because a factual stipulation among the parties has engendered both a transfer of the copyright infringement case from the district court and a relative parity in the factual premises for the resulting two cases in this court, the cases are consolidated. The action docketed as No. 06-427C shall be the lead case.

On or before September 10, 2007, defendant shall file an answer to the transfer complaint in No. 07-365C.[16] The parties then shall file a joint preliminary status report on or before October 29, 2007, in these consolidated cases.

It is so ORDERED.

s/ Charles F. Lettow
Judge

[16]In accord with RCFC 3.1(a)(2), plaintiffs filed a transfer complaint in No. 07-365C on July 9, 2007.